**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| JENNIFER TOMMEY,<br>On Behalf of Herself and<br>All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>vs.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>*Defendant.* | Case No.  11-CV-2214-EFM-GLR |

**MEMORANDUM AND ORDER**

  Plaintiffs, individually and on behalf of others similarly situated, filed this wage and hour suit against Defendant alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, violations of the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 *et seq.*, and claims for quantum meruit and breach of contract.  This matter is before the Court on Plaintiffs' Motion for Class Certification Under Federal Rule of Civil Procedure 23 (Doc. 60) and Plaintiffs' Motion for Conditional Certification Pursuant to 29 U.S.C. § 216(b) (Doc. 63).  As more fully explained below, the Court denies Plaintiffs' Motion for Class Certification and grants Plaintiffs' Motion for Conditional Certification.

## I.      Background

On March 1, 2012, Plaintiffs filed a Second Amended Complaint. Count I is brought pursuant to § 216(b) of the FLSA for straight time and overtime compensation on behalf of Defendant's current and former non-exempt employees. Plaintiffs also brought a Rule 23 class action claim under the KWPA for straight time and overtime compensation and for breach of contract based on Defendant's alleged breach of its employment agreements. In the event the breach of contract claim is not viable, Plaintiffs asserted a Rule 23 class action claim for quantum meruit.[1]

Defendant is an international company headquartered in Falls Church, Virginia. It provides clients with professional services in the following areas: systems integration and professional services; enterprise application development and management; application software for the financial services industry; business process outsourcing; managed hosting services; and application and IT infrastructure outsourcing. Defendant has several facilities in the Kansas City, Kansas, area. At its Overland Park facility, Defendant operates a call center (the "Call Center") that provides professional services to its insurance company clients. The Call Center employs customer service representatives ("CSRs") on an hourly basis who answer calls concerning coverage under flood insurance policies and perform other tasks related to addressing those calls, such as sending insurance documents requested by callers, entering log notes about the calls, and preparing performance spreadsheets. Defendant has a formal written policy that requires employees when self-reporting their time to "account for all hours worked"[2] and

---

[1]    Plaintiffs' Second Amended Complaint also asserted a claim for unjust enrichment. The Court dismissed this claim pursuant to its March 13, 2013, Memorandum and Order.

[2]    Defendant's Memorandum in Opposition to Class Certification, Doc. 70, p. 2.

threatens that "employees who deliberately overstate or understate hours worked . . . shall face disciplinary actions."[3]

Plaintiffs allege that (1) CSRs complete weekly timesheets recording eight hours per day, which represents only their time spent on the telephone; (2) Defendant has an illegal unwritten policy that forbids CSRs from claiming wages for non-phone related tasks; (3) CSRs were required to work before and after their shift and during unpaid breaks to complete non-phone related tasks; and (4) Defendant denied wages and overtime pay to its CSRs by failing to pay them for all time worked.

## II.     Analysis

### A.     Motion to Certify Class

#### 1.     Standard

Rule 23 of the Federal Rules of Civil Procedure govern class action certification. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."[4]  "[A]t the class certification stage a district court must generally accept the substantive, non-conclusory allegations of the complaint as true."[5]  Although the merits of a claim are not the "focal point," "the merits of the claims at bar may be intertwined with the proper consideration of other issues germane to whether the case should be certified as a class

---

[3]   *Id*.

[4]   *DG ex rel. Stricklin v. DeVaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citation and internal quotations omitted).

[5]   *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (citations omitted).

action."[6] The Court must conduct a rigorous analysis to ensure that Rule 23's requirements are met.[7] "Courts should err on the side of class certification because they have broad discretion to later redefine (or even decertify) the class if necessary."[8]

As the party seeking class certification, Plaintiffs have the burden to demonstrate that the requirements of Rule 23 are clearly satisfied.[9] In doing so, Plaintiffs must first satisfy the prerequisites of Rule 23(a) by demonstrating that: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[10] After meeting these requirements, Plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b). Here, Plaintiffs seek to proceed under rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."[11]

**2.   Discussion**

Plaintiffs ask the Court to certify the following class under Rule 23:

[A]ll current and former Computer Science Corporation ("CSC") Call Center Employees and/or customer service representative [sic] who worked for CSC

---

[6]   *Id*. at 1266 (citations and internal quotations omitted).

[7]   *Id*. at 1267 (citations omitted).

[8]   *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (citations omitted).

[9]   *See Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).

[10]   Fed. R. Civ. P. 23(a).

[11]   Fed. R. Civ. P. 23(b)(3).

from April 11, 2008, to present in Kansas whose job duties involved providing professional services to or for flood insurers and/or insured for violations of the Kansas Wage Payment Act, K.S.A. 44-31 et seq., breach of contract and unjust enrichment/quantum meruit.[12]

The first requirement Plaintiffs must satisfy under Rule 23(a) is numerosity.[13] Under this requirement, Plaintiffs must establish that the class is so numerous as to make joinder impracticable.[14] Plaintiffs must produce some evidence or otherwise establish by a reasonable estimate the number of class members who may be involved.[15] There is no set formula, however, for determining whether Plaintiffs meet this requirement.[16] Further, "[b]ecause it is such a fact-specific inquiry, the district court is granted wide latitude in making this determination."[17]

Plaintiffs state that there are sixty-three CSRs that fit the proposed class description. Plaintiffs argue that, assuming this is the actual number of class members, sixty-three meets the numerosity requirement because it would be overly burdensome on the court and costly to all parties involved if all sixty-three individuals were joined. Plaintiffs also argue that they have satisfied the numerosity requirement because Plaintiffs' KWPA, breach of contract, and quantum meruit claims involve the same employees, the same policies and practices of Defendant, and the same application of the KWPA and Kansas common law. Defendants disagree, arguing that

---

[12] Plaintiffs' Motion for Class Certification, Doc. 60, p. 1.

[13] Fed. R. Civ. P. 23(a)(1).

[14] *Trevizo*, 455 F.3d at 1162; Fed. R. Civ. P. 23(a)(1).

[15] *See Rex. v. Owens ex rel. State of Okla*., 585 F.2d 432, 436 (10th Cir. 1978).

[16] *Trevizo*, 455 F.3d at 1162.

[17] *Burdette v. Vigindustries, Inc.*, 2012 WL 405624, at *12 (D. Kan. Feb. 8, 2012) (citing *Trevizo*, 455 F.3d at 1162).

joinder is practicable because of the small size of the proposed class and its geographic concentration.

The Court finds that Plaintiffs have not, at this time, met their burden to show joinder is impracticable. "A number of factors are relevant in determining whether joinder is impracticable, including the class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits."[18] Plaintiffs have not shown that any of these factors require a finding of numerosity in this case. With respect to class size, the Tenth Circuit has affirmed a district court finding that a class of eighty-four members was not sufficiently numerous.[19] And this Court has also found that a subclass of fifty-four members is not sufficiently numerous to prohibit joinder.[20] Similarly, the Court finds that the putative class of 63 members in this case is not "overwhelmingly large"[21] enough to make joinder impracticable. Furthermore, the evidence in this case shows that most, if not all, of the putative class members are located in the Kansas City, Kansas, area, and thus, the class lacks the geographic diversity that favors a finding of numerosity. Accordingly, the Court finds that Plaintiffs have not met the numerosity requirement of Rule 23(a)(1).

Because Plaintiffs have not met the requirement of Rule 23(a)(1), the Court denies Plaintiffs' Motion for Class Certification (Doc. 59) and declines to engage in the rigorous analysis regarding whether Plaintiffs have satisfied the remaining requirements of Rule 23(a) and

---

[18] *Colo. Cross-Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 357 (D. Colo. 1999) (citations omitted).

[19] *Trevizo*, 455 F.3d at 1162.

[20] *Burdette*, 2012 WL 405621, at *12.

[21] *Trevizo*, 455 F.3d at 1162.

Rule 23(b)(3). Because, however, discovery is ongoing in this case and Plaintiffs have indicated that they believe additional discovery will reveal additional class members, the Court denies Plaintiffs' Motion for Certification without prejudice. Should the facts change materially, including a substantial increase in the number of members of the putative class, Plaintiffs may seek to re-file their motion for class certification.

### B.     Motion for Conditional Certification

Plaintiffs request that the Court certify the following class under § 216(b):

> all current and former CSC hourly non-exempt employees in the state of Kansas with a position/title of CSR and/or customer service representative who performed pre-shift and/or post-shift work without compensation or who were required to work during unpaid breaks at any time during the past three (3) years[.][22]

In conjunction with their motion, Plaintiffs also ask the Court to: (1) require the expedited issuance of their proposed notice form; (2) require Defendant to provide to Plaintiffs' counsel a list, in electronic form (in an Excel spreadsheet with each item of the employee's name and address designated as a separate field) and in hard copy form, of the current or last known address, phone number, last four digits of their Social Security number, and e-mail address of all putative class members within fifteen days of issuance of the Court's order; (3) require Defendant to post notices and opt-in forms at Defendant's locations for a period of 90 days; (4) require Defendant to place notices and opt-in forms in three separate paychecks for each putative class member; (5) designate Jennifer Tommey as class representative; and (6) approve Plaintiffs' counsel to act as class counsel in this case.

---

[22]   Plaintiffs' Mtn. for Conditional Certification, Doc. 63, p.1.

**1.    Standard**

The FLSA permits legal action "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."[23] Unlike class actions pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a collective action brought under the FLSA includes only those similarly-situated individuals who opt into the class.[24] But the FLSA does not define what it means to be "similarly situated." Instead, the Tenth Circuit has approved an ad-hoc, two-step approach to section 216(b) certification claims.[25] The ad hoc approach employs a two-step analysis for determining whether putative opt-in plaintiffs are similarly situated to the named plaintiff.[26]

First, in the initial "notice stage," the court "determines whether a collective action should be certified for purposes of sending notice of the action to potential class members."[27] The notice stage "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[28] The standard for

---

[23]   29 U.S.C. § 216(b).

[24]   *See id.* (stating that employees must give written consent to become party plaintiffs).

[25]   *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Although *Thiessen* involved a collective action brought under the Age Discrimination in Employment Act ("ADEA"), the Tenth Circuit explicitly noted that the ADEA adopts the class action opt-in mechanism set out in section 216(b) of the FLSA. *Id.* at 1102. For that reason, *Thiessen* controls the analysis in this case. *See Peterson v. Mortgage Sources Corp.*, 2011 WL 3793963, at *4, n.12 (D. Kan. Aug. 24, 2011).

[26]   *Thiessen*, 267 F.3d at 1102-03.

[27]   *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

[28]   *Thiessen*, 267 F.3d at 1102 (citations omitted) (internal quotation marks omitted).

conditional certification at the notice stage is lenient and typically results in certification for the purpose of notifying potential plaintiffs.[29]

The second step of the ad hoc approach occurs after discovery.[30] At this stage, the district court applies a stricter standard and reviews the following factors to determine whether the opt-in plaintiffs are similarly situated: (1) the disparate factual and employment conditions of the individual plaintiffs; (2) defenses available to the defendant that are individual to each plaintiff; and (3) other fairness and procedural conditions.[31]

**2. Discussion**

*a. Conditional Certification Under FLSA § 216(b)*

The parties agree that this case is in the notice stage for collective action certification under § 216(b). Plaintiffs assert that they have met the lenient threshold for certification because Plaintiffs' allegations, supported by deposition testimony and other documentary evidence, show that the CSRs employed by Defendant were non-exempt, hourly employees performing similar duties and that Defendant had a common policy and practice throughout its Overland Park facility of limiting the type of work that Plaintiffs could be compensated for and failed to pay Plaintiffs for all hours worked. In response, Defendant argues that Plaintiffs' allegations are neither substantial nor related to a single CSC policy. Defendant claims that Plaintiffs' allegations are not substantial in light of Defendant's written FLSA policy that requires

---

[29] *See, e.g., id.* at 1103; *Pack v. Investools, Inc.*, 2011 WL 3651135, *3 (D. Utah Aug. 18, 2011); *Smith v. Pizza Hut, Inc.*, 2011 WL 2791331, at *5 (D. Colo. July 14, 2011); *Sloan v. Renzenberger*, 2011 WL 1457368, at *3 (D. Kan. Apr. 15, 2011).

[30] *Thiessen*, 276 F.3d at 1102-03. The second stage in the certification analysis is most often prompted by a motion for decertification. *Id.*

[31] *Id.* at 1103 (citations omitted). The court in *Thiessen* discussed a fourth factor irrelevant to claims brought under the FLSA. *See Peterson*, 2011 WL 3793963, at *4, n. 13.

employees to account for all hours worked and that Plaintiffs' allegations are not related to a "single decision, policy, or plan" because they involved interactions with supervisors and employees and not a management policy. However, the case law Defendant relies upon in support of these arguments is distinguishable from this case.

Defendant first cites *Pacheco v. Boar's Head Provisions Co.*[32] in arguing that Plaintiffs' allegations are not substantial in light of Defendant's written policy requiring employees to account for all hours worked and threatening disciplinary actions for employees who under-report or over-report hours worked. In *Pacheco*, the Western District of Michigan denied conditional certification under § 216(b) after finding that the employer had a formal, written FLSA-compliant policy regarding overtime and that the plaintiffs did not come forward with sufficient evidence to determine whether there was a factual basis for the plaintiffs' claim that the defendant's common practice was not to follow this written policy.[33] The court in *Pacheco*, however, did not follow the traditional two-stage certification process that the Tenth Circuit has approved.[34] Instead, it determined that because the parties had already engaged in substantial discovery regarding class certification, the court would base its certification determination on the evidence rather than the pleadings.[35] Courts within the Tenth Circuit have been reluctant to

---

[32]   671 F. Supp. 2d 957 (W.D. Mich. 2009).

[33]   *Id*. at 962.

[34]   *Id*. at 960.

[35]   *Id*.

ignore the initial "notice phase" and proceed with a more rigorous conditional certification analysis based only on the evidence before it.[36] The Court declines to do so here as well.

Defendant next relies on *Ruiz v. Serco*[37] and *MacGregor v. Farmers Insurance Exchange*[38]—neither of which are from this district or the Tenth Circuit—in arguing that conditional certification should be denied because Plaintiffs' allegations do not rely on a single policy but on the individual actions of employees or supervisors. The courts in these cases, however, were guided by the United States Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*,[39] which set forth a heightened standard for certification under Rule 23. Numerous courts, including those within the Tenth Circuit, have distinguished *Dukes* as not being applicable in the FLSA conditional certification context.[40]

Finally, Defendant points the Court to the Southern District of Texas's decision in *Griffith v. Wells Fargo Bank, N.A.*,[41] as persuasive authority that the Court should deny conditional certification. *Griffith*, however, is factually distinct from this case. The plaintiffs in *Griffith* argued that although Wells Fargo had a written, company-wide policy requiring employees to record their time accurately, the realities of the loan processors' work-loads resulted in employees frequently working over-time hours for which they were not

---

[36] *See, e.g., In re Bank of Am. Wage & Hour Empl. Litig.*, 286 F.R.D. 572, 577 (D. Kan. Sept. 27, 2012); *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166-67 (D. Kan. 2006); *Pack*, 2011 WL 3651135, at *3.

[37] 2011 WL 7138732 (W.D. Wisc. Aug. 5, 2011).

[38] 2011 WL 2981466 (D.S.C. July 22, 2011).

[39] 131 S. Ct. 2541 (2011).

[40] *Smith v. Pizza Hut, Inc.* 2012 WL 1414325, at *5 (D. Colo. April 21, 2012); *Spellman v. Am. Eagle Express, Inc.*, 2011 WL 4014351, at *1, n.1 (E.D. Pa. July 21, 2011); *Sliger v. Prospect*, 2011 WL 3747947, at *2, n.2 (E.D. Cal. Aug. 24, 2011); *Creely v. HCR ManorCare, Inc.*, 2011 WL3794142, at *1 (N.D. Ohio July 1, 2011).

[41] 2012 WL 3985093 (S.D. Tex. Sept. 12, 2012).

compensated.[42] The plaintiffs argued, in part, that Wells Fargo had a national policy based on the fact that the computerized time keeping program did not allow loan processors to record their actual and overtime hours worked, and the loan processors on a national scale felt pressured to work unpaid overtime hours and Wells Fargo discouraged reporting overtime.[43] The court rejected both of these arguments, finding that Wells Fargo's time-keeping system did allow the loan processors to accurately record their time, including any overtime worked.[44] The court also found that the time-keeping system allowed loan processors to automatically receive payment for any overtime they worked, regardless of whether their overtime request was approved.[45] Thus, the court found that there was no evidence to support the plaintiffs' theory that a policy or practice existed.[46]

Unlike *Griffith*, Plaintiffs in this case have alleged that they are not allowed to record time spent performing pre- or post-shift duties or time spent working through breaks or lunch. CSR's phone system does not account for time CSRs spend performing pre- and post-shift duties, even though these duties must be completed. In addition, Plaintiffs have alleged that they were told not to record any work completed before or after their shifts, and Plaintiffs are not automatically compensated for any overtime worked. Finally, as Plaintiffs assert, the plaintiffs in *Griffith* did not provide evidence that loan officers felt pressured to work off the clock on a

---

[42] *Id.* at *2.

[43] *Id.* at *3.

[44] *Id.* at **3-4.

[45] *Id.* at *5.

[46] *Id.*

national scale.  This case involves off the clock work at only one facility.  Therefore, the Court finds the court's decision in *Griffith* to be inapplicable to this case.

Plaintiffs have met the lenient threshold required for conditional certification under § 216(b).  This district has often stated, "[g]enerally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan."[47]  Here, Plaintiffs allege that (1) all the potential class members were employed as CSRs; (2) these CSRs performed substantially similar job duties and responsibilities; and (3) these CSRs were not paid for time spent performing duties performed before and after their shift.  Plaintiffs also point to testimony from Defendant's representative in which she states that employees are only paid for project-related tasks and testimony from the three opt-in plaintiffs in which they stated that they were not paid for the preparatory and concluding activities, which plaintiffs' allege are, by definition, not related to any one specific project.  These allegations are sufficient to satisfy the notice stage standard for class certification.  The threshold for conditional certification at the notice stage is lenient, and has been meet here.  Whether Plaintiffs will survive a motion for decertification at the second stage of the certification analysis is a different question, and apparently a very viable one, that the Court will take up at the appropriate time.

    b.  *Class Definition*

As stated above, Plaintiffs request that the class be defined as "all current and former employees in the State of Kansas with a position/title of CSR and/or customer service representative who performed pre-shift and/or post-shift work without compensation or who

---

[47] *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 433-34 (D. Kan. 2007).

were required to work during unpaid breaks at any time during the past three (3) years."[48] Plaintiffs assert that the class should include individuals who were employed up to three years before the lawsuit was filed because Defendant's alleged violations of the FLSA were willful. Defendant does not object to this three year period in its Memorandum in Opposition to Plaintiffs' Motion For Conditional Certification (Doc. 71), and therefore, the Court will allow the three year period to remain within the class definition.

Defendant does object, however, to the class definition on the basis that it is overly broad with respect to its geographic boundaries. Defendant asserts that the class should be limited to CSRs within Defendant's Overland Park facility and not those within the State of Kansas. The Court agrees. None of Plaintiffs' evidence supports an extension of the class beyond Defendant's Overland Park office.[49] Furthermore, Plaintiffs appear to accept this geographic limitation, as they argue in their Reply that "Plaintiffs seek certification of only one facility where employees were required to work off the clock."[50] The only facility Plaintiffs refer to in their briefing is Defendant's Overland Park facility. Accordingly, the Court limits the class definition to the following: all current and former employees in Computer Sciences Corporation's Overland Park, Kansas, facility with a position/title of CSR and/or customer service representative who performed pre-shift and/or post-shift work without compensation or who were required to work during unpaid breaks at any time during the past three (3) years.

---

[48] Plaintiffs' Mtn. for Conditional Certification, Doc. 63, p. 1.

[49] *See Braun v. Superior Indus., Inc.*, 2010 WL 3879498, at *7 (D. Kan. 2010) (finding that opt-in plaintiff's testimony alone was not enough to include other facilities in the class definition).

[50] Plaintiffs' Reply, Doc. 73, p. 12.

      *c.*  *Content of Proposed Notice*

  Plaintiffs propose a class notice that is modeled after the Federal Judicial Center's example posted on its website.[51] District courts have discretion to monitor the preparation and distribution of collective action notices.[52] When exercising this discretion, courts must ensure fair and accurate notice and should refrain from altering the proposed notice absent strict necessity.[53] Here, Defendant makes four objections to Plaintiffs' proposed notice. Defendant's objections and the Court's rulings follow.

  Objection No. 1: The Court **overrules** Defendant's objection that the notice improperly suggests court approval of Plaintiffs' claims. The heading and caption at issue appear on the model endorsed by the Federal Judicial Center.[54]

  Objection No. 2: The Court **sustains** Defendant's objections that the proposed notice fails to inform class members of their duties. The proposed notice fails to adequately inform potential plaintiffs of additional obligations they may encounter if they opt in to the class action. It is reasonable and necessary to inform potential plaintiffs that they "may be required to submit documents and written answers to questions and to testify under oath at a deposition or hearing, which may take place in Kansas City, Kansas."[55]

  The Court also agrees with Defendant's objection that Plaintiffs' notice does not inform potential plaintiffs that they may have to pay costs if they do not prevail. As this Court noted in

---

[51] Federal Judicial Center, http://www.fjc.gov (last visited March 14, 2013).

[52] *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989); *see also Lewis v. ASAP Land Exp., Inc.*, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008).

[53] *Sloan v. Renzenberger, Inc.*, 2011 WL 1457368, at *4 (D. Kan. Apr. 15, 2011) (citations omitted).

[54] *See* Federal Judicial Center, http://www.fjc.gov (last visited March 14, 2013).

[55] *Wass v. NPC Intern, Inc.*, 2011 WL 1118774, at *10 (D. Kan. Mar. 28, 2011).

*Hadley v. Wintrust Mortgage Corp.*,[56] "this district has held that such language is appropriate because 'an award of costs to a prevailing defendant in an FLSA case is clearly possible.'"[57] The Court denies Plaintiffs' request to include within the notification a statement to the effect that potential class members could recover hundreds, if not, thousands of dollars if Plaintiffs are successful in this action.  Plaintiff has not cited any authority as to why this statement would rebut the allegedly chilling affect that they believe a statement informing class members of their liabilities and obligations would have.

Objection No. 3:  The Court **sustains** Defendant's objection that the proposed notice fails to set a deadline.  Plaintiffs have agreed that a sixty day notice period is appropriate in this case.

Objection No. 4:  The Court **sustains** Defendant's objection that the notice should look back from the date certification is granted.  Plaintiffs have agreed that a three year look back period from the date of this Court's order is appropriate in this case.

> d. *Posting Notice at Defendant's Offices and Including Notice in Employee Paychecks*

In addition to its objections regarding the content of the proposed notice, Defendant argues that it should not be required to post notice of the collective action at Defendant's facility or include the notice in three consecutive employee paychecks.  The Court agrees.  This Court has found that workplace postings do not provide effective delivery of consent forms.[58] Furthermore, Defendant has agreed to provide the name and last known address of its Overland

---

[56]   2011 WL 4600623, at *3 (D. Kan. Oct. 3, 2011), *vacated by settlement*, 2011 WL 8177791 (D. Kan. Nov. 4, 2011).

[57]   *Id.* at *4 (quoting *Creten-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009)).

[58]   *Hadley*, 2011 WL 4600623, at *2 (citing *Wass*, 2011 WL 1118774, at *12).

Park CSRs to Plaintiffs. Thus, requiring Defendant to post the notice at the Overland Park facility or requiring Defendant to include the notice with three consecutive employee paychecks is redundant because current employees are "the same employees for whom defendant most likely has current address information."[59] Accordingly, the Court denies this request by Plaintiffs at this time. If plaintiffs do encounter difficulties contacting present employees, Plaintiffs may raise the issue again with the Court during the opt-in period.[60]

    e.  *Production of Potential Plaintiffs' Phone Numbers, E-mail Addresses, and Social Security Numbers*

Plaintiffs request the name, current and last known addresses, telephone number, last four digits of the individual's Social Security number, and e-mail address of all individuals who meet the class description within fifteen days of this issuance of this Order. They request that such information be provided in hard copy and electronically in Microsoft Excel format.

Defendant objects to Plaintiffs' request for the phone numbers, e-mail addresses, and social security numbers of the class members "pursuant to its duty to protect its employees' confidential and private information."[61] As for the phone numbers and e-mail addresses, the Court overrules Defendant's objection. This Court has found that phone numbers "may be useful for locating . . . employees."[62] It has also found that requesting potential plaintiffs' e-mail addresses is "reasonable" and "not too invasive."[63] The Court orders Defendant to provide

---

[59]  *See Wass*, 2011 WL 1118777, at *12 (finding that the mailing of notices was sufficient).

[60]  *See id.* (stating that plaintiff could revisit the issue if mailing notices proved difficult).

[61]  Def. Mem. In Opposition to Pltfs. Mtn. for Conditional Certification, Doc. 71, p. 16.

[62]  *Hadley*, 2011 WL 4600623, at *4 (citing *Wass*, 2011 WL 1118774, a *12).

[63]  *Gieseke*, 2006 WL 2919076, at *2.

-17-

Plaintiffs with names, addresses, e-mail addresses, and telephone numbers of the putative plaintiffs in hard copy and in an easily malleable format within fifteen days of issuance of this Order. Plaintiffs are permitted to use the telephone numbers and e-mail addresses only for the purpose of verifying the mailing addresses of the potential plaintiffs.

As for the social security numbers of potential plaintiffs, the Court sustains Defendant's objection. The Court is not persuaded that it is appropriate to order the production of such personal information at this stage of litigation. "Most courts addressing the issue have applied a balancing test of the conflicting interests. In general, courts apply a balancing test weighing the plaintiffs' need for social security numbers to facilitate notification of the FLSA action against the privacy interests of the putative class members."[64] If Plaintiffs are unable to locate potential class members using names, telephone numbers, addresses, and e-mail addresses, they should make an appropriate motion detailing their need for the more private information.

**IT IS ACCORDINGLY ORDERED** this 27th day of March, 2013, that Plaintiffs' Motion for Class Certification Under Federal Rule of Civil Procedure 23 (Doc. 60) is hereby **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** this 27th day of March, 2013, that Plaintiffs' Motion for Conditional Certification Pursuant to 29 U.S.C. § 216(b) (Doc. 63) is **GRANTED**, and a plaintiff opt-in class is certified as set forth herein. Plaintiffs are authorized to send out a notice, as set forth herein, to each potential member of the class. Defendant is ordered to provide Plaintiff with the names, addresses, telephone numbers, and e-mail addresses of putative class members in hard copy and electronic format, such as Microsoft Excel. Jennifer Tommey is

---

[64] *Gieseke*, 2007 WL 445202, at *4.

designated class representative and her counsels, Paulus Law Firm, LLC, The Hodgson Law Firm, LLC, William Dirks, LLC, The Klamann Law Firm, White, Allinder, Graham, Buckley & Car LLC, and The Meyers Law Firm, LC, are designated class counsel.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE