## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNIFER TOMMEY, individually, and<br>on behalf of a class of others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) **Case No. 11-cv-02214-EFM-GLR** |
| v. | )<br>) |
| COMPUTER SCIENCES, CORPORATION, | )<br>) |
| Defendant. | )<br>) |

_____

## JOINT MOTION & SUPPORTING SUGGESTIONS
## TO APPROVE STIPULATION OF SETTLEMENT AGREEMENT AND RELEASE

**COME NOW** the Plaintiffs and Defendant, by and through the undersigned Counsel, and move this Court for an Order 1) certifying this action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), for settlement purposes only, and 2) approving the Settlement Agreement and Release filed with this Court on March 9, 2015, and attached as Exhibit 1. Contemporaneously herewith, the parties submit a proposed Order Determining Good Faith and Granting Approval of Settlement, which has been attached as Exhibit A to the Joint Motion & Suggestions to Approve Stipulation of Settlement Agreement and Release (hereafter "Stipulation").[1] In support of this Motion, the parties state as follows:

### I. Background Information

This lawsuit for alleged violation of the Fair Labor Standards Act (hereinafter "the Litigation") was brought by Plaintiff, Jennifer Tommey, on or about April 14, 2011. Plaintiff sought relief on behalf of a putative class consisting of Customer Service Representatives who worked for Computer Sciences Corporation, who were allegedly required to perform

---

[1] A courtesy copy of this proposed order has been emailed to chambers.

uncompensated pre-and post-shift work, and work during unpaid breaks. Plaintiffs alleged that Defendant failed to compensate these hourly non-exempt employees for all of their straight time and overtime worked. On March 27, 2013, this Court conditionally certified a collective class pursuant to 29 U.S.C. § 216(b) consisting of, at the time, all current and former employees in Computer Sciences Corporation's Overland Park, Kansas, facility with a position/title of CSR and/or customer service representative who performed pre-shift and/or post-shift work without compensation or who were required to work during unpaid breaks at any time during the past three (3) years.[2] Plaintiffs also asserted claims under the Kansas Wage Payment Act. The Court denied class certification pursuant to Fed. R. Civ. P. 23.[3]

At the close of the opt in period, ten (10) employees filed consents to join this matter. To the extent that individuals consented to participate in this matter, as described below, those individuals will have individually resolved their KWPA claims. Under the terms of the settlement, no class certification, or class wide relief is sought for claims arising under the KWPA.

As this Court is aware, this case was hotly contested and litigated for approximately three years. During that time, numerous motions were briefed and decided by the Court, including but not limited to, a disputed Motion to Amend the Complaint; a Motion to Dismiss Counts II, IV and V of Plaintiff's Second Amended Complaint; various discovery motions; conditional certification motions and oppositions; and a Motion to Dismiss Party Plaintiff Jennifer Tommey. After three years of litigation and the exchange of extensive discovery consisting of thousands of pages of documents and data, work and pay schedules for employees who consented to join the matter, and worker information, the parties engaged in a formal mediation with Larry Rute on December 17, 2014.

---

[2] ECF Doc No. 89
[3] *Id.*

In order to facilitate meaningful negotiations, Defendant provided Plaintiffs with payroll information, hundreds of pages of data, correspondence, job listings, and other necessary information. Prior to engaging in formal mediation, the parties conducted extensive analysis of the aforementioned data. Additionally, the parties conducted in-house investigations with their respective clients. The parties participated in telephone conferences, email correspondence and arms-length and good faith settlement discussions in the weeks prior to the mediation date. In addition, Defendant answered all of the Named Plaintiff's questions regarding the pay, job duties, and pay policies regarding the class members.

The Named Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed during discovery supported her claims. Defendant denies these claims, yet wishes to avoid the uncertainty and risk attendant with litigation. The Named Plaintiff recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Litigation against Defendant through trial and through appeals. The Named Plaintiff has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this action, and believed that the settlement set forth in the Stipulation confers substantial benefits upon the Collective Class members. Based on this evaluation, the Named Plaintiff has determined that the settlement set forth in the Stipulation is in the Named Plaintiff's best interests and the best interests of the Collective Class members.[4]

---

[4] Prior to receiving the Court's April 13, 2015 Order undersigned counsel notified each class member of the Settlement and their personal portion of the proposed settlement. No class member objected to the settlement and, to make sure all class members were fully compensated, Class Counsel reduced their fee to correct a calculation error and to fully compensate a class member that pointed out the error in calculating her recovery. Additionally, counsel reached out to each class member after receiving the Court's April 13, 2015 Order. Each class member was provided a copy of the order, a copy of the letter detailing their recovery and a mechanism to confirm they either agreed with the settlement or wanted to file an objection. All class members confirmed they were satisfied and supported the proposed settlement.

The basic terms of the agreement are as follows:

1.      The Collective Class includes ten (10) CSRs who consented to join this matter prior to the close of the opt in period.

2.      A common Settlement Fund has been established for the Collective Class members in the amount of $80,000.00.  From this fund, the Plaintiffs are seeking approval from this Court for payment of 27% of this amount for attorneys' fees, future attorneys' fees and three thousand six-hundred dollars ($3,600.00) for expenses and costs already incurred.  Also, the Named Plaintiff shall receive an enhancement payment of $5,000.00 for their time and assistance in prosecuting this case.

The amount of the Settlement Fund to be made available for payment to each Collective Class Member shall be determined under the Plan of Allocation set forth in the Stipulation which states that each Collective Class member will be assigned a dollar figure based upon a pro-rata share of the Settlement Fund.

3.      All CSRs who participated in this matter by filing a consent will release any and all wage and hour claims under federal laws and the Kansas Wage Payment Act in return for receiving payment from this fund.

## II.  Legal Analysis

### A.      Final certification is appropriate here.

Where, as here, parties settle FLSA claims before the Court has made a final collective action ruling, the Court must make some final class certification finding before it can approve a collective action settlement. See Burkholder v. City of Fort Wayne, 750 F. Supp.2d 990, 993 (N.D. Ind. 2010); Murillo v. Pac. Gas & Elec. Co., No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *2 (E.D. Cal. July 21, 2010).

The Court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. <u>Thiessen v. GE Capital Corp.</u>, 267 F.3d 1095, 1105 (10th Cir. 2001).

In this case, conditional and final certification for settlement purposes are appropriate because Plaintiff, and the putative class comprise a narrow type of worker – Customer Service Representatives. Each worker worked for Defendant within three years of the date they filed their Consent to Join as CSRs. Each worker performed similar job duties, and worked similar hours.

Common to all individuals was the fact that they routinely were paid for 40 hours of work in a workweek, yet were required to perform pre-shift and post-shift activities without compensation. No defenses were asserted against Plaintiffs as to exempt/nonexempt status.

Rather, each hourly laborer was subject to the same defense by Defendant. Defendant contended that the pre-shift and post-shift work was not compensable, and that even if it was, it was *de minimis* in nature, and Defendant should not be liable for it. Thus, individual defenses were virtually non-existent in this case. If Defendant was successful in its contention that the pre and post-shift activities were non-compensable, none of the putative class members would recover back wages, let alone liquidated damages.

This case was resolved after years of litigation and extensive briefing on both sides. Further, under the terms of the settlement, as described below, the matter has been resolved on extremely favorable terms for the putative class. Each class member who opts to participate in this settlement will receive more than 100% of their calculated back wages due, even after attorneys' fees. Before attorneys' fees are factored, each putative class member will receive approximately

150% of their actual damages. For these reasons, final certification of this action as a collective action is appropriate.

**B.       Approval of the settlement is warranted.**

In determining whether to approve a settlement as being fair, just and reasonable, the Court must consider whether the proposed settlement was fairly and honestly negotiated; whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and the judgment of the parties that the settlement is fair and reasonable. Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984). In this case, it bears reiterating that "class" actions brought under the Fair Labor Standards Act ("FLSA") are not true class actions as that term is contemplated by the Federal Rules of Civil Procedure. 29 U.S.C. § 216(b). A § 216(b) representative action is not a true class action in the sense that, in order to bind anyone to the result obtained, that individual must affirmatively consent to be bound. See Brown v. Money Tree Mortgage, Inc., 222 F.R.D. 676, 678 (D. Kan. 2004); Clougherty v. James Vernor Co., 187 F.2d 288 (6th Cir. 1951). The significance of this is that the due process concerns that mandate a high level of judicial scrutiny of class action litigation are not present in FLSA actions, because potential class members who do not opt in are not bound by the case's outcome. Maguire v. Trans World Airlines, Inc., 55 F.R.D. 48 (S.D.N.Y. 1972); Wagner v. Loew's Theatres, Inc., 76 F.R.D. 23 (M.D.N.C. 1977).

In the instant case, the proposed settlement is fair, just and reasonable. First, the settlement was reached after years of contested litigation, and mediation by Larry Rute of Associates in Dispute Resolution, who is recognized as one of the premier mediators for class and collective actions in this area. After hours of negotiations, the parties were able to reach an accord thanks to

the skills and persistence of Mr. Rute.

Second, as with any FLSA action, serious questions of fact and law exist that place the ultimate outcome of the litigation in doubt.  In this matter, the Plaintiff was claiming that Defendant failed to pay them overtime compensation for work performed in excess of 40 hours in a workweek.  The Defendant claimed that the time spent performing pre and post shift activities was not compensable, *de minimis* in nature, and asserted other defenses.

Here, the Parties faced a situation where trial may have been the only means in which to determine whether Defendant had violated the FLSA.  Litigating that issue could have required dozens of depositions, retention of expert witnesses, and ultimately presenting the issue to a jury for determination.  Taking all of these factors into account, and examining the exposure each side faced, the Parties were able to reach a resolution that they believe fairly and adequately addresses their potential recovery and exposure.

Third, the settlement offers a significant amount of payment to the Collective Class and is reasonable.  The payout to these class members is fair and equitable.  Payment to each person will depend on the number of hours an individual worked in excess of 40 hours per week, during the applicable time period. Each individual participating in the settlement will receive (even after attorneys' fees are deducted), more than they actually suffered in monetary loss. Given the financial terms of this settlement, it is highly unlikely that the recovery of any settlement would increase as a result of protracted litigation.  Indeed, any such compensation may not occur until after years of litigation and appeals.  Or, such compensation may not occur at all after trial and appeal.

### III.    Plaintiffs' Application for Fees & Expenses Should be Approved

This section of the Motion is being presented to the Court by the Named Plaintiff.  The Named Plaintiff and Class Counsel set forth the following authority to support the amount sought in the Agreement for attorneys' fees, expenses, and costs.  This amount contemplated by the parties when reaching this settlement was thirty-three percent (33%). However, Class Counsel only requests twenty-seven percent (27%) for payment as attorneys' fees, future attorneys' fees and three thousand six-hundred dollars ($3,600.00) for costs and expenses incurred in this matter. This reduction in attorney fees corrects a mathematical error and fully compensates all class members as detailed above.

The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." See, e.g. Gray v. Phillips Petroleum Co., 971 F.2d 591, 593 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)). For purposes of attorney's fees, plaintiff is considered a "prevailing party" if he succeeds on any significant issue in litigation which achieves some of the benefit he sought in bringing suit. Jackson v. Austin, 267 F. Supp.2d 1059, 1063 (D. Kan. 2003). Though the court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory. Wright v. U-Let-Us Skycap Serv., Inc., 648 F. Supp. 1216, 1218 (D. Colo. 1986).

If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. See Lynn's Food Stores, 679 F.2d at 1354. Because the parties have settled FLSA claims before the Court has made a final collective action ruling, the Court must make some final class certification finding before it can approve a collective action settlement. See Burkholder, 750 F. Supp.2d at 993; Murillo, 2010 WL 2889728, at *2.

Agreed fees are commonplace in nearly all class settlements because both plaintiff and defendant desire finality. The Supreme Court has acknowledged and supported this reality by holding that "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." Hensley v. Eckerhart, 461 U.S. 424,437 (1983) (discussing fee awards in the context of a fee-shifting statute). Absent evidence of collusion between the parties (which does not exist here), a court should be willing to accept Counsel's proposal regarding fees to be paid. Because the percentage sought under the Stipulation is reasonable and within the fee range approved by courts in similar litigation, it should be readily approved.

As noted, the FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b); see, e.g. Gray v. Phillips Petrol. Co., 971 F.2d 591, 593 (10th Cir. 1992). Though the fee is mandatory, the Court has discretion to determine the amount and reasonableness of the fee. See Wright, 648 F. Supp. at 1218. When a common fund is created by settlement, courts have applied one of two methods in determining reasonable attorney's fee awards: a percentage of the fund or the lodestar method. See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995).

The Tenth Circuit applies a hybrid approach which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar. See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994). In all cases, the Court considers the factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

The Parties in this FLSA class matter have agreed upon establishing a common fund to be made available for payment to all eligible members of the Collective Class. Attorneys' fees are awarded to class Counsel under the common benefit doctrine. Hall v. Cole, 412 U.S. 1, 5, 36 L.

Ed. 2d 702, 93 S. Ct. 1943 (1973). When a settlement yields a common fund for class members, fees must be paid from the recovery. Boeing Co. v. VanGemert, 444 U.S. 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). As courts have routinely recognized, using a percent of the fund approach most closely aligns the interests of the lawyers with the class, since the more recovered for the class, the more the attorneys stand to be paid.  See Johnston v. Comerica Mortgage Co., 83 F. 3d 241, 244 (8th Cir. 1996) (court stated that percent of common fund approach preferred method in FLSA collective action matter and was critical of the lodestar approach used by district court for paying fees); see also In re BankAmerica Corp. Secs. Litig., 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002); Stoneridege Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.), 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo. 2005).

The Supreme Court has instructed that courts, acting in their fiduciary role in the process, should evaluate the reasonableness of a fee based on a percentage of the fund created for the class. Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984) ("[A] reasonable fee is based on a percentage of the fund bestowed on the class."). This and other Circuits express "a preference for the percentage of the fund method" in class actions.  Rosenbaum v. MacAllister, 64 F.3d at 1439 1445 (10th Cir. 1995); see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); Swedish Hospital Corp v. Shalala, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases"); Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").

The common fund doctrine "rests on the perception that persons who obtain the benefit of

a lawsuit without contribution to its costs are unjustly enriched at the successful litigant's expense." Brown v. Phillips Petroleum Company, 838 F.2d 451, 455 (10th Cir. 1988) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)). Therefore, the percentage award results "in a sharing of the fees among those benefited by the litigation." Brown, 838 F.2d at 454. The percentage of the fund method is preferred because, among other things, it rewards prompt and efficient resolution of class litigation, while strict application of the alternative "lodestar" methodology encourages inefficiency and resistance to prompt settlement. See Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1268 (D.C. Cir. 1993). In addition, "a percentage of the fund approach more accurately reflects the economics of litigation practice ... and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases." Id. at 1269 (citations omitted). The percentage of the fund approach also has substantial benefits for litigants because it "directly aligns the interests of the class and its Counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." Wal-Mart Stores, Inc. v. Visa U.S.A.,Inc., 396 F.3d 96, 120 (2d. Cir. 2005) (emphasis added) (quoting In re Lloyd's Am. Trust Fund Litig., No. 96-Civ.-262-RWS, 2002 WL 31663577, at *25 (S.D.N.Y Nov. 26, 2002)). Thus, awards based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery. . . ." In re Broadwing, Inc. ERISA Litigation, 252 F.R.D. 369, 381 (S.D. Ohio 2006); see also Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ("Hence, under the percentage approach, the class members and the class Counsel have the same interest – maximizing the recovery of the class."); Gaskill v. Gordon, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome."); Prudential Ins. Co., 148 F.3d at 333

(the percentage of the fund approach "rewards Counsel for success and penalizes it for failure."). The same incentive does not exist under the so called "lodestar" approach because the lodestar amount increases with proportion to the number of hours class Counsel expends, not with the size of the recovery. Swedish Hosp., 1 F.3d at 1268 (under the lodestar approach "attorneys are given incentive to spend as many hours as possible").

Regarding the percentage sought, courts have concluded that the district court should consider the 12 factors articulated in Johnson. See Gottlieb, 43 F.3d at 483, citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). The Johnson factors include: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. As demonstrated below, the twenty-seven percent (27%) sought by Plaintiffs qualifies under these factors and is consistent with numerous awards in FLSA collective action settlements.

## A.  The Amount Involved and the Results Obtained (Factor 8):

The excellent result achieved by plaintiffs' counsel is demonstrated by the size of the fund created in this case as well as the substantial recovery each CSR will receive.

Further, this settlement was reached without any imposition on the class members – after communication with all class members, all were pleased to find out that they are entitled to such payments.[5]

In many class action settlements, the relief provided is small on a per class member basis, it is not uncommon that only a small percentage of class members actually receive any benefit. In contrast, in this case plaintiffs' counsel successfully negotiated a settlement that maximized the payment for unpaid work.

Overall, the settlement represents an excellent outcome for the class members. The Maximum Gross Settlement Amount is substantial at $80,000.00. Of this amount, Plaintiff's Counsel is only seeking twenty-seven percent (27%) for fees, future attorney fees involved in the litigation, and three thousand six-hundred dollars ($3,600.00) for expenses and costs incurred in this matter. Each class member stands to receive more than their actual lost wages, even after the award of attorneys' fees. Moreover, in light of the legal and factual complexities of this case, not the least of which involves establishing exact number of minutes worked on each shift by each putative class member, there is no doubt that this is an extremely favorable settlement. The settlement payments are available to class members without the uncertainty of trial and are being delivered through this settlement rather than years of litigation. This fact alone qualifies the result of this settlement as excellent under any reasonable assessment.

The release executed by the qualified class members is not general in nature. They will only be releasing wage and hour claims under applicable federal law. The narrow nature of the release exemplifies the results achieved for the FLSA class. See Ramah Navajo Chapter, 50

---

[5] Plaintiffs' counsel contacted each class member before filing the Stipulation and after receiving the Court's Order rejecting the Stipulation. Each class member consents to the settlement and the amount they are receiving under the settlement. If the Court would like, undersigned counsel would be happy to submit, for an in camera inspection, attorney/client privileged communications regarding the approval of this settlement.

F.Supp.2d at 1103-04 (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

### B.  Awards in Similar Cases (Factor 12):

Plaintiffs' counsel would have been entitled to its fees at the end of any litigation due to the FLSA's fee shifting provisions. Instead of attempting to prolong this case to increase its attorneys' fees entitlement, plaintiffs' counsel worked actively to resolve the matter on fair terms. Therefore, plaintiffs' counsel forwent the possibility of recovering much more in fees in order to resolve this case. Thus, the proposed fee award substantially reduces the amount plaintiffs' counsel could have recovered in this case.[6]

Based on historical awards of attorneys' fees in similar FLSA cases in Missouri and Kansas, the percentage of the fund requested – 27% – **is lower than typically requested fee awards**.  In other FLSA collective action settlements, Counsel has had attorney fees recently approved at rates of 33% of the settlement fund. Edney v. The Golf Stop, Case No. 5:11-cv-00185-DW (W.D. Mo. Nov. 23, 2011) (order approving attorneys' fees and expenses at 33%). The amount sought here is lower than Counsel's prior experiences and is supported by established case law.

Courts are in agreement that attorneys' fees in the 30%+ range of the settlement fund in FLSA cases are reasonable.  West, et al. v. First Franklin Financial Corp., Order Finally Approving FLSA Collective Action Settlement, Case No. 2:06-CV-02064-KHV-JPO (D.Kan. July 31, 2007) (awarding class counsel attorneys' fees and costs in the amount of thirty percent (30%) of the FLSA Settlement Fund); Horn, et al. v. Principal Financial Group, Inc. and Principal Residential

---

[6] At counsel's standard rates, the fee request is less than twenty-five percent (25%) of the loadstar for the time expended on briefing, depositions and other case related matters. If the Court desires, Plaintiffs would also be willing to provide to this Court for in camera inspection, a list of the time spent and activities performed in prosecuting this matter, as well as further justification for hourly rates, if necessary.

Mortgage, Inc., Order Approving Settlements, Case No. 2:05-cv-2032-KHV (D. Kan. December 2, 2005) (awarding counsel thirty percent (30%) of settlement fund made available to eligible plaintiffs).

Other federal courts in this district and nationwide are in agreement that attorneys' fees in the range of 30% of the settlement fund in FLSA cases are reasonable.  See, Hamilton, et al. v. ATX Services Inc., Case no: 08-0030-SOW (W.D.Mo. May 6, 2008) (Order under seal approving attorneys' fees and expenses at 34%); Morak, et al. v. CitiMortgage, Inc., Case No.: 07-1535 (E.D.Mo. September 26, 2008) (order under seal approving attorneys' fees and expenses at 33%), Staton v. Cavo Communications, Inc., Case No.: 08-0273 (E.D.Mo. January 14, 2009) (order under seal approving attorneys' fees and expenses at 33%) Perry v. National City Bank, Order Approving Settlement, Attorneys' Fees and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of thirty-three percent (33%) of the Settlement Fund); Niday v. SCK Financial Corp., Order Approving Settlements, Case No. 06-CV-2219-CM (D. Kan. March 14, 2007) (approving requested fee award of twenty-eight percent (28%) of settlement fund); Qualls v. Sanofi-Aventis U.S. LLC, Case No. 06-0435-CV-W-SOW (W.D. Mo. Dec. 4, 2006) (awarding counsel thirty percent (30%) of settlement fund made available to eligible plaintiffs); Frank v. Eastman Kodak Co., 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case); Kedrick v. ABC Television Appliance Rental, Case No. 97-69, 1999 WL 1027050 (N.D. W. Va. May 12, 1999) (approving thirty percent (30%) fee award of common fund in FLSA collective action and Rule 23 class action case); Camp v. The Progressive Corp., Case No. 01-2680, 2004 WL 2149079 n. 10 (E.D. La. Sept. 23, 2004) (acknowledging that a 29.6% fee award of a common fund would be reasonable in FLSA collective

action context).

Other districts reveal that a 23%-50% fee request is reasonable under common fund employment class actions. In <u>Vaszlavik v. Storage Tech Corp.</u>, 2000 U.S. Dist. LEXIS 21140, 4-5 (D.Colo. 2000), the court addressed an ADEA and ERISA class action. The court approved a 30% contingency fee be paid against the common fund. The court stated "fees for class action settlements generally range from 20%-50%." <u>Id</u>. (quoting <u>Maywalt v. Parker and Parsley Petroleum Co.</u>, 963 F. Supp. 310 (S.D.N.Y. 1997); citing <u>In re Rio Hair Naturalizer Prods. Liab. Litig.</u>, 1996 U.S. Dist. LEXIS 20440, 1996 WL 780512, p. *14 (E.D. Mich. 1996); <u>In re Combustion, Inc.</u>, 968 F. Supp. 1116, 1132). In <u>Carlson v. C.H. Robinson Worldwide, Inc.</u>, 2006 U.S. Dist. LEXIS 67108, 19-20 (D.Minn. 2006), the court addressed fees in a harassment class action. It allowed a percentage of the total fund at 35.5%. In <u>Lucas v. Kmart Corp.</u>, 2006 U.S. Dist. LEXIS 51420 (D.Colo. 2006), the court was faced with an attorneys' fee issue in an ADA class. There, the court allowed a contingent fee against the common fund for fees at 30%.

All of the above case law clearly supports Counsel's request in this matter for 27% of the common fund to be approved by this Court for fees, future attorneys' fees involved in the administration of this settlement, expenses, and costs.

### C. Preclusion of Other Work by the Attorney Due to this Case (Factor 4):

The time requirements on Class Counsel, given Counsel's limited resources, would have required Counsel in essence to sacrifice a large portion of the practices in the pursuit of one case. Yet, this was a risk Counsel was willing to take when pursuing this matter. For these reasons, Class Counsel rejected the acceptance of other cases during this time frame due to the existing and expected demands of this litigation.

### D. The Customary Fee and Whether it is Fixed or Contingent (Factors 5 and 6):

The customary fee in these types of cases is a fee contingent upon a successful outcome. See, Ramah Navajo Chapter, 50 F.Supp.2d at 1104. In prosecuting its labor and employment matters, Williams Dirks Dameron LLC; Hollingshead, Paulus & Eccher; The Klamann Law Firm; White, Graham, Buckley & Carr; and The Hodgson Law Firm, L.L.C. enter into contingent fee agreements providing for a percentage of the recovery (usually between 33%-40%). This is due to the fact that the individuals represented are not able to pay any attorney fees, expenses, or costs. In turn, Counsels firm fronts all out of pocket expenses in litigation. If unsuccessful, Counsel is not paid any fees and usually not reimbursed any expenses. As previously stated, Counsels firm embarked in litigating this case whereby the expenses alone could easily exceed $75,000.00. Therefore, the risk taken was significant in that, if unsuccessful in the litigation, the firm would not only have lost all their expenses, but would not have received any attorney fee income for a number of years. Plaintiffs entered into a contingent fee agreements with Counsels firm in the amount of forty percent (40%) of a common fund, if any, obtained by settlement. In this case, Counsel is requesting a contingent of thirteen percent (13%) less than the agreements.

### E. Novelty/Difficulty of Issues & Undesirability of the Case (Factors 2 and 10):

"FLSA claims typically involve complex mixed questions of fact and law- *e.g.*, what constitutes the 'regular rate,' the 'workweek,' or 'principal' rather than 'preliminary or postliminary' activities. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 743 (1981); see also Long Island Care at Home, Ltd. v. Coke, 127 S.Ct. 2339, 2347 (2007) (referring to the application of statutory definitions under the FLSA as raising "a set of complex questions").

"Off the clock" class litigation in the FLSA context is very difficult to pursue. The main reason is the ability to establish a uniform practice company-wide in order to meet the similarly situated requirement under 29 U.S.C. §216(b). Also, as previously discussed, the parties vigorously disagree on what work was performed, whether the work was compensable, and whether it was *de minimis*. Existing case law established that these issues would have to be resolved at trial. In addition, the ability to establish individual job duties and responsibilities by each class member makes such claims very burdensome.

### F. Skill Required and Attorneys' Experience, Reputation and Ability (Factors 3 and 9):

Large scale wage and hour cases are complicated and time-consuming matters. Only a limited number of firms in the Kansas City area litigate these types of claims. Any attorney undertaking such a case must be prepared to make a tremendous investment of time, energy, and financial resources. Due to the contingent nature of this work, such attorneys must be prepared to make this investment with the very real possibility of an unsuccessful outcome yielding no fees or reimbursement of any kind. Such risks are outside the scope of most attorneys and firms. Plaintiffs Counsel has the skill, experience, and ability to litigate these types of claims.

Plaintiffs Counsel, Michael Hodgson of The Hodgson Law Firm, L.L.C., and Michael Williams of Williams Dirks Dameron LLC, have had over twenty-five years of combined experience as attorneys. Mr. Hodgson has dedicated most of his career prosecuting wage and hour violations under the FLSA and state and common law. Previously, Mr. Hodgson worked at a firm dedicated to prosecuting wage violations in the Kansas City area. Mr. Williams was a former partner at Lathrop & Gage whose practice focused on defending employers in discrimination and wage cases. After twelve years at Lathrop & Gage, Mr. Williams opened his own firm and dedicated his practice to helping employees with employment matters including discrimination,

harassment, and wage issues. Mr. Graham, Mr. Myers and Mr. Klamannn have each spent over thirty years litigating cases all over the country, including large class actions and complex litigation.

**G. *Time and Labor Required (Factor 1):***

In common fund cases it is appropriate to give *less* weight to the "time required" factor, particularly in comparison to the quality of the settlement delivered by Class Counsel – the "results obtained" factor. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" <u>Farrar v. Hobby, 506 U.S. 103, 114, (1992); Ramah Navajo Chapter v. Babbitt</u>, 50 F.Supp.2d 1091, 1104 (D.N.M. 1999) ("In the contingency fee context the marketplace would value the services by the results obtained, not by the hours required to achieve them. Therefore, the lodestar analysis . . . either as the primary means of setting the award or as a check on the reasonableness of a proposed percentage-would not provide an accurate gauge by which to judge the award."). "While time is a factor, it should be stressed that it is only of relative importance." <u>Blank v. Talley Indus., Inc</u>. 390 F. Supp. 1, 5 (S.D.N.Y. 1975) (awarding fees under lodestar approach).

Regardless, Class Counsel has invested a large amount of time in this matter. To date, Class Counsel has spent well over 250 hours prosecuting this matter. Thus, at Class standard rates, the amount sought here is less than 25% of the loadstar. However, Counsel is foregoing a potentially large fee award at the end of trial in lieu of obtaining the best results possible for their clients.

**H. *The Service Payment Request is Fair and Reasonable:***

Compensation for named plaintiffs can be handled in two different ways. Generally, they are referred to as the Bonus Method and the Preferential Treatment Method. While these two

approaches are analytically distinct, courts rarely distinguish between them and typically rely on the same kinds of factors to evaluate and justify them.

**Bonus Method**

The first method is for named plaintiffs to receive a share of the monetary class fund like any other class member and then receive a separate cash bonus payment for serving as a named plaintiff. The Bonus Method analysis typically looks at the effort, risk and benefits to the class provided by the class representatives.

**Preferential Treatment Method**

The second approach – and the source of much confusion in the case law – is for the named plaintiff to receive one payment under the terms of the class settlement that is greater than that available to the ordinary class member. Under the latter method, the district court will analyze whether there is an adequate rationale for additional compensation to the named plaintiff and consider the payment in light of the overall fairness of the settlement.

There is no consistent legal standard for the evaluation and approval of incentive awards. While the U.S. Supreme Court has never directly addressed incentive awards to named plaintiffs, federal case law highlights a number of factors which may be relevant to the inquiry. In Cook v. Niedert, 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit provided a list of some pertinent considerations:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. . . . In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

Cook, 142 F.3d at 1015 (citation omitted).

As another example, in <u>Van Vranken v. Atlantic Richfield</u>, 901 F.Supp. 294 (N.D. Cal. 1995), Judge Williams articulated a different list:

> The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Id. at 300.

Most fundamentally, courts will evaluate named plaintiff awards by looking at the overall benefits of the settlement and by comparing the named plaintiffs' awards to the range of monetary recovery available to the class. <u>See e.g.</u> <u>Ingram v. Coca-Cola</u>, 200 F.R.D. 685, 694 (N.D. Ga. 2001); Roberts v. Texaco, 979 F.Supp. 185, 204 (S.D.N.Y. 1997); <u>Sheppard v. Consolidated Edison</u>, 2000 U.S. Dist. LEXIS 20629 at 16-17 (E.D.N.Y. 2000). The purpose of this inquiry is to ensure that special benefits to the class representatives have not compromised the adequacy of representation. <u>Green v. Battery Park City Authority</u>, 44 F.E.P. Cases 623 (S.D.N.Y. 1987) (approving $4000 awards where it did not appear that it compromised ability of named plaintiff to obtain fair class settlement).

Apart from the proportionality inquiry, courts will evaluate what the named plaintiffs have done to earn the incentive award.

Many courts have focused on the need to encourage litigants to bring class litigation, which will further the public policy underlying the statutory scheme. <u>Thornton v. East Texas Motor Freight</u>, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think that there is something to be said for rewarding those drivers who protect and help to bring rights to a group of employees who have been the victims of discrimination"); <u>Denney v. Jenkins & Gilchrist</u>, 2005 WL 388562 *31 (S.D.N.Y. 2005) ($10,000 award approved where class representatives were in a "position to

capitalize on lawsuits already filed to attempt to get a full or at least far greater recovery for themselves"); Roberts v. Texaco, 979 F. Supp. 185, 201 n. 25 (S.D.N.Y. 1997); In re Smithkline Beckman Corp. Securities Litig., 751 F. Supp. 525, (E.D.Pa. 1990) ($5000 award approved because named plaintiffs "rendered a public service" and "conferred a monetary benefit" on the shareholder class); In re Jackson Lockdown/MCO Cases, 107 F.R.D. 703, 710 (E.D. Mich. 1985) (prison litigation in which active protesters received larger award than passive participants).

Another factor is whether the class representatives have assumed direct or indirect financial risks on behalf of the class. Enterprise Energy Corp. v. Columbia Gas Transmission Corp., 137 F.R.D. 240, 250 (S.D.Ohio 1991) (class representatives paid all litigation expenses).

Named plaintiffs, particularly in discrimination litigation, have earned incentive awards for running the risk of retaliation in the workplace.

> [T]he plaintiff is frequently a present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril.

Roberts v. Texaco, 979 F. Supp. 185 (S.D.N.Y.1997). See also, Women's Committee for Equal Employment Opportunity v. National Broadcasting Co, 76 F.R.D. 173, (S.D.N.Y. 1977) (court weighed "risk to job security and good will with co-workers" among other considerations); Yap v. Sumitomo Corp. of America, 1991 U.S. Dist. LEXIS 2124 (S.D.N.Y. 1991) (Title VII plaintiffs risked retaliation and future advancement in bringing the suit).

In this matter, Plaintiffs seek a modest service payment of 6% for the Named Plaintiff, who provided invaluable service to the group. The reason for the service payments is to ensure that Ms. Tommey, who chose to participate and provide invaluable information about the company, its policies, procedures, and information regarding the Defendant and its owners is compensated for the risk that she undertook in bringing this action. But for her actions, Defendant

would have retained the benefit of its failure to compensate employees for all hours worked. Ms. Tommey should be rewarded to encourage her and others who would be subject to future FLSA violations to assert their rights to fair pay under federal wage law.

Under the Settlement Agreement, the Plaintiff is seeking Court approval for $5,000.00 to be paid to the Named Plaintiff, Jennifer Tommey, who originally contacted Class Counsel and provided much of the documentation necessary for Class Counsel's investigations leading up to filing. Ms. Tommey participated in numerous meetings with Class Counsel as the case developed, provided significant discovery responses, and was examined under oath in deposition. Ms. Tommey worked with Class Counsel throughout this litigation in pursuing these claims on behalf of class members and was often the point of contact for the other individuals receiving notice of the litigation. Ms. Tommey also reached out to class members to keep them updated; located updated contact information and attended the mediation. In light of the nominal percentage of the settlement fund that the monies represent, Plaintiffs respectfully request that the incentive awards be approved.

Further, Ms. Tommey, necessarily took a risk by joining the litigation. She will forever be subject to background checks on employment applications, and there is significant risk that if an employer learns of their previous litigation, it would be less likely to hire the individual.[7]

**WHEREFORE**, for these reasons, the Parties respectfully request that the Court approve the Settlement Agreement and Release, attached as Exhibit 1 to their Joint Motion & Suggestions to Approve Stipulation of Settlement Agreement and Release, allow notice to be sent to Class Members, and otherwise grant their Joint Motion for Approval of Settlement Agreement and

---

[7] Most importantly, such conduct, if it were to occur, would not be precluded by the FLSA's anti-retaliation provisions, because the prospective employer would not be an employer of the individual, and thus would not be subject to the anti-retaliation provisions.

Release:

a. Entering an Order which incorporates by reference the terms set forth in the Joint Stipulation of Settlement and Release;

b. Entering an Order which finds that the Parties' Settlement Agreement and Release of Claims is fair, reasonable, and adequate as to the named Plaintiff and the nine opt-in Plaintiffs;

c. Entering an Order which certifies the FLSA Class for settlement purposes;

d. Entering an Order which grants Final Approval of the FLSA Settlement;

e. Entering an Order which grants any other and further relief that is just and proper.

Respectfully submitted,

/s/ Brian Woolley
Brian Woolley
Richard Bien
James Moloney
Angela Tsevis
**LATHROP & GAGE LLP**
2345 Grand Blvd, Suite 2200
Kansas City, MO 64108-261
(o) 816-292-2000
(f) 816-292-2001

Attorneys for Defendant

Respectfully submitted,

/s/ Michael A. Williams
Michael A. Williams, KS Bar No. 19124
**WILLIAMS DIRKS DAMERON, LLC**
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
(o) 816-876-2600
(f) 816-221-8763

Michael A. Hodgson, KC Bar No. 21331
**The Hodgson Law Firm, LLC**
3699 SW Pryor Road
Lee's Summit, MO 64082
mike@elgkc.com
(o) 913-890-3529
(f) 816-945-2120

Ryan M. Paulus
**HOLLINGSHEAD, PAULUS & ECCHER**
8350 North St. Clair Avenue, Suite 225
Kansas City, MO 64151
(o) 816-581-4040
(f) 816-741-8889

John M. Klamann
**The Klamman Law Firm**
44356 Main Street, Suite 150
Kansas City, MO 64111
(o) 816-421-2626
(f)816-421-8686

Martin M. Myers
**The Meyers Law Firm, KC**
503 One Main Plaza
4435 Main Street
Kansas City, MO 64111
(o) 816-444-8500
(f) 816-444-8508

Attorneys for Plaintiffs